# J. M. BARNDOLLAR ET AL. v. J. DuBOIS ET AL.

## APPEAL BY E. J. MILLER FROM THE COURT OF COMMON PLEAS OF BEDFORD COUNTY.

### Argued May 12, 1891—Decided May 25, 1891.

On a bill to adjust the liabilities of the partners in a private bank, at the time of suspending business in 1884, the owner of shares purchased from the bank in 1881, the bank being then insolvent and having purchased the shares itself from withdrawing shareholders, is not entitled to credit for the amount paid for the shares

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 125 January Term 1891, Sup. Ct.; court below, No. 1 November Term 1884, C. P. in Equity.

On October 1, 1884, James M. Barndollar and others, partners in the Bedford County Bank, and Wilson Williams and others, creditors of said bank, filed a bill in equity against William Dorris and others, known as the Huntingdon partners in said bank, and John DuBois, Edward J. Miller and others, other partners, and upon the facts therein averred, inter alia, that said bank was a partnership formed under articles dated January 13, 1870, and that it became insolvent and suspended business on September 13, 1884, prayed as follows:

1. That the defendants William Dorris, David P. Gwinn, H. G. Fisher, and John M. Bailey, executors of Thomas Fisher, deceased, George W. Garretson and the First National Bank, of Huntingdon, who received the twenty-one thousand dollars from John DuBois on May 30, 1881, be required to pay the same, with interest thereon, to the receiver, for the benefit of the creditors of the Bedford County Bank.

2. That an account be had and stated, and that it be determined who are the partners and in what proportions they are severally liable, and what sum each is to pay to discharge the partnership debts, and that they be decreed to pay the same.

3. That all further proceedings in all the actions or suits against the partners or stockholders of the Bedford County

Bank, now brought or to be commenced, prior to the final hearing of this bill, be enjoined and restrained until the further order of the court.

The cause was so proceeded in, that, after numerous amendments, motions and orders, the masters appointed, to wit, *Mr. Henry D. Tate* and *Mr. Frank Fletcher*, on August 31, 1889, filed a report finding inter alia, as follows:

10. On May 30, 1881, the Huntingdon partners by an arrangement made with John DuBois, cashier and book-keeper, sold their stock or interests, amounting to one hundred and eighty-six shares of the par value of $100 each, to John Du-Bois, for the bank, for the sum of twenty-one thousand dollars, which was paid to them out of the funds of the bank by the said John DuBois, pro ut the following receipt:

Received May 30, 1881, from the Bedford County Bank, twenty-one thousand dollars, in full of our interest in said bank, being one hundred and eighty-six shares of the par value of $100 each, the same being paid as follows:

| | |
|---|---:|
| May 28, 1881, note of Josiah Harris, 90 days, | $5,000 |
| "      " E. J. Miller, 90 days, | 5,000 |
| Draft of Bedford County Bank, . . . | 7,000 |
| May 18, note of W. Dorris, 20 days, . . | 900 |
| April 3, note of Paulding Kemble & Co., four months, . . . . . . . | 2,618 |
| | $20,518 |
| Less discount on notes, . . . . | 176.50 |
| | $20,341.50 |
| Check of J. DuBois, cashier, . . | 658.50 |
| And we hereby agree to surrender our said shares of stock to the bank . | $21,000.00 |

[Signed by the Huntingdon partners.]

11. The capital stock was then reduced upon the books of the bank to twenty-one thousand dollars by sinking, merging and canceling four thousand dollars by issuing new stock to John DuBois, and by taking in as partners and stockholders, in said bank, Josiah Harris, Dr. Edward J. Miller and Martin V. Zeth; the stock or shares of the several partners or reputed

partners then appeared on the books of the bank as follows,
viz.: . . . . .

—The masters further found that Edward J. Miller on May
28, 1881, purchased from John DuBois, partner and cashier of
said bank, forty-five shares of stock in said bank for the sum of
$5,085, being $113 for each share, giving therefor his note for
five thousand dollars, the balance, $85, being charged against
his account in the bank, and that said Miller continued a part-
ner in said bank at the time of its suspension on September 13,
1884. The masters thereupon reported, charging to certain
partners their shares of the deficiency of assets on May 30,
1881, and to Edward J. Miller, inter alios, as of the deficiency
of September 13, 1884, the sum of $6,156.13, crediting him
with a payment on account of $3,375, and found a balance due
by him of $2,781.13.

Exceptions being filed to the report by said Edward J. Mil-
ler, argument thereof was waived, and on November 7, 1889,
the court, BAER, P. J., without opinion filed, entered an order
dismissing said exceptions and confirming the report of the
masters. No formal decree was filed.

An execution having issued for the collection of the amounts
found to be due from the several defendants, said Edward J. Mil-
ler, on March 10, 1890, filed a petition for a re-hearing, and for
a rule to show cause why the judgment and execution should
not be set aside. Pending this rule, a formal decree was pre-
sented for signing, and on November 19, 1890, on the argument
for a re-hearing, the solicitor of said Edward J. Miller was
given leave to file an exception to said report, nunc pro tunc,
said exception being as follows :

" The masters having found that the defendant, Edward J.
Miller, paid into the Bedford County Bank $5,085 for stock
therein, and that the deficiency of assets as of May 30, 1881, the
time of said purchase, was $23,538.67, the partnership at that
date being insolvent, when the defendant is alleged to have
purchased forty-five shares of the stock therein, at $113 per
share, or at a premium of $13 per share, and a new partnership
having come into existence under the arrangement made after
May 31, 1881, and the capital stock, supposed to represent the
shares of the other partners, having been sunk and extinguish-
ed before the payment of said $5,085 by Miller, the masters, in

fixing the sum each partner should pay of the deficiency, erred in not allowing to Edward J. Miller credit for his payment of $5,085 ; and the remaining partners should have been required first to have paid the proportion their deficiency bore to the sum paid by said Miller over their shares, into the partnership, and then assessed the debts pro rata, or upon any other basis of a just equality, which was not done in their present finding."

Said exception having been argued, the court, BAER, P. J., filed the following opinion:

Assuming, as the solicitor of the defendant argues, that on May 30, 1881, when the defendant bought forty-five shares of stock in the Bedford County Bank, a new firm was formed, and that the $5,085, paid for the shares, entered into and became part of the capital of the new firm, in which firm he was the only one who had any capital invested, it follows that, in stating an account between the partners, the defendant should have credit for the advance of $5,085 which he made.

But, on all the facts found by the masters, and to which the defendant does not now object, can the theory of the learned counsel be sustained?

It was by the masters found as facts, that on May 30, 1881, the capital stock of the bank was twenty-one thousand dollars represented by two hundred and ten shares of stock, and that defendant Miller then became a stockholder and partner representing forty-five shares, for which he paid $5,085 ; that the bank from that time until the fifteenth day of September, 1884, transacted business in which Miller participated and took an active part; that the bank was found to be insolvent, its liabilities on September 13, 1884, being $16,416.83 in excess of its assets, and its liabilities in May, 1881, having been $23,538.69 in excess of its assets ; that John DuBois, in May, 1881, bought for the bank certain stock of the Huntingdon parties, and for the bank sold forty-five shares of the same stock to Miller, the defendant, for $113 per share.

Defendant's solicitor argues that by the change of partners, whether by some going out, or others coming in, the banking firm was dissolved ; and, as it has been found by the masters that the bank was then insolvent, it follows that Miller, the defendant, in buying from the bank forty-five shares of the

capital stock and paying $5,085 for it, was in effect putting so much money as capital in a new firm in which neither of the other stockholders had anything whatever, and that hence, in an account between the stockholders as partners, he must be allowed credit for $5,085 as so much advanced.

It is well-settled law, that in taking an account between partners the advances made by the several partners are to be taken into consideration.

The question raised in this case can only be determined by ascertaining the true character and status of the banking association when Miller became a stockholder. In my opinion, it is a mistake to treat it as an ordinary partnership. Technically, it is a partnership, but in law its place is that of a joint-stock company; subject to all the rules relating to partnerships, except that relating to a dissolution by death, withdrawal, or transfer of interest. " Though a joint-stock company is a partnership, it is distinguished from the ordinary partnership in this, that death, or withdrawal or transfer of interest or shares, does not involve a dissolution of the partnership : " Parsons on Part., 545 ; 11 Am. & Eng. Encyc. of Law, 1038 ; but, like an ordinary partnership, an incoming partner or stockholder is not liable for old debts. " A new stockholder of a banking firm is not liable for debts contracted before he became a member : " Shamburg v. Ruggles, 3 W. N. 293 ; Parsons on Part., 545.

The transaction between DuBois and Miller, the defendant, was a selling by the bank of forty-five shares, which it had purchased from withdrawing stockholders, for $5,085, which is the same as selling a fractional interest of the whole, to wit, $\frac{45}{210}$ parts. To whom did this sum of $5,085 belong? If DuBois had bought directly from the Huntingdon parties and paid $5,085, to whom would this money have belonged? Will any one pretend that, subject to the payment of existing debts, it would not have belonged to the Huntingdon parties? Certainly, it could not belong to any new firm, on that day created by a mere change in stockholders. For if so, the incoming stockholder not only gets his forty-five shares but a $\frac{45}{210}$ interest in the very consideration that he pays for the stock.

His purchase of stock and paying for it did not increase the capital. The effect of the transaction was not different from

Arguments.

a proprietor in any business selling to another one half or any other fractional interest, and taking him in as a partner, and in such case who will doubt but that the money paid to the proprietor belonged to him? It is ruled, in Bell v. Farley, 81 Ala. 288, that when a person buys a half interest in an existing business, under an agreement for a partnership between him and the proprietor, the money paid by him does not belong to the partnership, but to the former proprietor, and the new partner cannot complain of its application to the payment of existing debts.

The case in hand is not one in which it was sought to increase the capital by opening a firm and taking in an additional member. In such case, the capital originally invested represents the share of the original proprietors; that paid in represents the share or interest of the incoming partner, and the joint fund of all the members or stockholders represents the entire capital. The capital stock of the Bedford County Bank remained of the same number of shares and of the same par value. The depreciation in value of the stock is an immaterial question.

In view of what we have said, it is possibly of little consequence whether the Bedford County Bank be treated as a joint-stock company, or a partnership. In either case, the status of the defendant Miller would not be different.

In our view, whether the bank was solvent, or insolvent as found to be more than three years after Miller the defendant became a stockholder, he paid $5,085 for a $\frac{45}{210}$ interest or forty-five shares in the bank, as it then existed; the money so paid belonged to the bank as it existed immediately before he paid his money, and he can have no cause of complaint that the money was applied in the payment of liabilities existing against the firm or bank as it existed immediately before he became a stockholder; and hence, whether the petition is in time or not, there exists no good reason for a re-hearing, and it is refused.

—The formal decree presented was then signed, whereupon said Edward J. Miller took this appeal, specifying, inter alia, the orders refusing the re-hearing, entering the final decree, and dismissing said exception, for error.

*Mr. J. M. Reynolds*, for the appellant.

Opinion of the Court.

Counsel cited: Shamburg v. Abbott, 112 Pa. 6; Christy v. Sill, 131 Pa. 503; Horton's App., 13 Pa. 71; 1 Lindley on Part., 300; Cochran v. Perry, 8 W. & S. 262; Baker's App., 21 Pa. 76; Clark v. Wilson, 19 Pa. 414; Bullitt v. M. E. Church, 26 Pa. 110; Clarke's App., 107 Pa. 446; Emerick v. Moir, 124 Pa. 498; Yohe v. Barnet, 3 W. & S. 81.

*Mr. John Cessna* (with him *Mr. S. L. Russell* and *Mr. J. H. Longenecker*), for the appellees.

PER CURIAM:

The appellant became the purchaser of forty-five shares of stock in a private bank, for which he paid the sum of $5,085. The bank was insolvent at the time, and upon a bill filed for the adjustment of the liability of the partners he has a decree against him for $6,156.13, which has been reduced by a credit to $2,781.13. His principal complaint now is that in this adjustment he was not allowed a credit for the $5,085 which he paid for his stock. This claim is based upon the master's finding that when he made this payment the capital of the other partners was exhausted, and the partnership then liable to a deficiency of $23,583.67, and that the liabilities of the old firm to the extent of $87,050.29 were settled by the assets of the new firm.

This, as before observed, was a private bank. It follows that the stockholders were partners in a joint-stock company. When the appellant bought his stock, the money paid therefor went to the vendor of the stock. Personally, he would not be responsible for the debts of the old firm. Appellant contends that when he bought his stock he was in effect putting so much money as capital in a new firm, in which neither of the other stockholders had anything whatever; and hence that, in an account between the stockholders as partners, he must be allowed credit for $5,085 as so much advanced.

The fallacy of this reasoning consists in the fact that by the purchase of the shares he did not put any money into the concern. The purchase money went to the person from whom he bought the shares. The capital of a bank is not increased when one shareholder sells his stock to another. Nor does it alter the case that the shares were bought from the bank. The latter had merely purchased them from withdrawing stockholders,

and the appellant stands in precisely the position he would have occupied had he bought them direct from such stock-holders. The agency of the bank as an intermediate party does not make any difference. There was no increase of shares, nor was there any increase of the capital. The appellant was unfortunate in paying his money for worthless stock. This, however, gave him no equity over the other stockholders. It is true, he was not personally liable for the old debts of the firm, and no attempt was made to charge him for such in this proceeding.

The decree is affirmed, and the appeal dismissed, at the costs of the appellant.